# LAW OFFICE OF ALEX GROSSHTERN

225 Broadway, Suite 3010
New York, New York 10007
Tel (212) 233-1300

Facsimile (212) 233-1333
email: AGLaw1@cs.com

_____

## ALEXANDER ARGUEDAS PRESENTENCE MEMORANDUM

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** ) | Docket No.: 20-CR-135 (JMF) | |
| ) | | |
| vs. ) | | |
| ) | | |
| ) | Sentence Date: | May 24, 2022 |
| **ALEXANDER ARGUEDAS** ) | | |

_____

| | |
|---|---|
| Prepared for: | The Honorable Jesse M. Furman |
| | United States District Judge |
| | for the Southern District of New York |
| | |
| Prepared by: | Defense Counsel |
| | Alex Grosshtern |
| | Michael Fineman |
| | |
| Copies to: | Assistant United States Attorney Andrew Ken-Wei Chan |
| | United States Attorney's Office |
| | for the Southern District of New York |

Counsel for the defendant Alexander Arguedas submit this Sentencing Memorandum that respectfully requests that this Honorable Court sentence Alexander Arguedas with compassion and leniency. On February 8, 2022 Alexander Arguedas pleaded guilty to counts One, Nine and Ten of the fifth superceding indictment in this matter. Count One: Racketeering Conspiracy under 18 U.S.C. § 1962(d); Count Nine: Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances under 21 U.S.C. § 846 and § 841(b)(1)(A), (b)(1)(C), and (b)(1)(D); and Count Ten: Using and Carrying Firearms in Furtherance of Drug Trafficking under 18 U.S.C. §

924(c)(1)(A)(i) and 2. Count One, 18 U.S.C. § 1962(d), carries no mandatory minimum. Count Nine, 21 U.S.C. § 846 and § 841(b)(1)(A) carries a mandatory minimum term of ten years of imprisonment. Count Ten, 18 U.S.C. § 924(c)(1)(A)(i) carries a mandatory five year minimum term of imprisonment. Combined, the mandatory minimum term of imprisonment is fifteen years. Under the United States Sentencing Guidelines (hereinafter "the Guidelines") the total offense level is 40 after all adjustments. Combined with defendant's Criminal History Category of VI, the minimum term of imprisonment under the Guidelines is 360 months and a maximum term of life incarceration. The Court is of course not bound by these guidelines as the federal guidelines are not mandatory and merely advisory. The Court may consider other factors enumerated in 18 U.S.C. § 3553 in its departure from the guidelines exercising traditional sentencing discretion and may impose a sentence requiring any amount of incarceration subject to the statutory mandatory minimum. Therefore, in the instant matter, the only legal constraint on this Court is the fifteen year mandatory minimum term of imprisonment prescribed by 21 U.S.C. § 846 and § 841(b)(1)(A) in conjunction with 18 U.S.C. § 924(c)(1)(A)(i).

   As the Court is aware, Alexander Arguedas, along with other co-conspirators, was arrested in the instant matter on March 17, 2020, the week when the New York region including state and federal government facilities went into Covid 19 Pandemic lock-down. Mr. Arguedas has remained incarcerated at the Federal Bureau of Prisons Metropolitan Detention Center in Brooklyn pending the prosecution of this matter for the entirety of the pandemic. During this incarceration period of over two years, as the Court is aware, conditions at the MDC Brooklyn have been significantly harsher and more

restrictive than under regular circumstances. In addition to heightened exposure to the virus in this setting, most daily activities had been curtailed including visitation by family and even attorney visitation among other things. The Court should be aware that during this time, as set forth in the Presentence Investigation Report section on Adjustment to Incarceration, the defendant did not incur any disciplinary sanctions and completed at least five education courses since he was detained.

As part of this submission, we are including exhibits 1 and 2 that are not for public disclosure as they contain medical record evaluations and summaries. Exhibit 1 is a mitigation report that includes a review of historical psychiatric medical evaluations. Exhibit 2 is a summary of medical records that the mitigation report relies upon. These exhibits are submitted to the Court directly by email as per this Court's individual rules and will be directly shared by email with the Government. We ask that the Court review these items prepared by a mitigation specialist as a window into the conditions of Mr. Arguedas's upbringing.

The particulars of the defendant's youth are not being offered as an excuse for his conduct, but to inform the Court of the circumstances of the defendant's exposure to extreme violence and cruelty during his formative years offer valuable insight. Briefly addressing the contents of the mitigation report that we urge the Court to review in its entirety, Mr. Arguedas grew up in a household with a biological father that was extremely physically and emotionally abusive towards the defendant and his mother. The father would use belts, electrical cords and wire coat hangers to beat Mr. Arguedas and his mother including strangulation of his mother in the defendant's presence. The biological father was incarcerated for narcotics distribution and deported when Mr.

Arguedas was only five or six years old.  As early as pre-school, young Alexander was acting out and medications were prescribed at a very early age as the evaluative summary reveals.  As a child the defendant lived with the mother on 138th Street in Manhattan where he was exposed to drug activity and observation of a fatal stabbing and a fatal shooting at the approximate age of nine.  At the age of twelve, defendant's best friend was murdered in gang related activity.  At the age of thirteen the family moved to the Bronx where the defendant was exposed to marijuana, drinking alcohol and evolved into harder drugs.  This was also the origin of his affiliation with a gang that he saw as "his true family."  From then on Mr. Arguedas had seen numerous incidents of stabbings, shootings and lost multiple friends to gang violence.  This gang activity has led the defendant to State incarceration and ultimately the instant matter.

      Mr. Arguedas has two children with wife Lianna Diaz Arguedas who remains very close to his mother Alexandra and other of his family members who assist in taking care of the children.  Ms. Diaz, along with many other family members and acquaintances are aware of Mr. Arguedas's current circumstances yet remain highly supportive and have written letters to the Court on Mr. Arguedas's behalf setting forth his positive characteristics.  Please excuse that some of these letters are addressed to Judge Jed Rakoff as the understanding was that Judge Rakoff would be the sentencing judge since he approved the plea. Attached is a letter from Alexandra Arguedas, defendant's mother (exhibit 3), a letter from Lianna Diaz Arguedas, wife and childrens' mother (exhibit 4), a letter from Annamarie Cordero, half-sister (exhibit 5), a letter from Joshua Cordero, half-brother (exhibit 6), a letter from Doris Kopp, paternal aunt (exhibit 7), a letter from Mayssi Rodrigues, friend (exhibit 8), a letter from Rogelio Medrano, friend

(exhibit 9), a letter from Star Perez, friend (exhibit 10), a letter from Melanie Figueroa, friend (exhibit 11), a letter from Angel Figueroa, paternal uncle in law (exhibit 12), and a letter from Evelyn Torres, friend (exhibit 13).

In addressing the Governments concern regarding the need for a *Fatico* hearing, while it is true that the defense objected to the inclusion of paragraphs 32 – 40 in the Presentence Investigation Report ("PSR"), we are not contesting the facts therein.  The objection was to the inclusion of these paragraphs in the PSR as these facts do not influence the Guidelines range and/or defendant's criminal history category and are therefore not relevant to the PSR.   We recognize that the Court has broad discretion in taking into consideration any and all facts in fashioning an appropriate sentence.

In fashioning an appropriate sentence, courts generally seek to avoid disparities in sentencing among defendants that are similarly situated.  In the instant matter, codefendant Michael Delaguila has been sentenced to 144 months by Your Honor on October 14, 2021.  This has been the lengthiest sentence the Court has imposed in this matter.

Codefendant Michael Delaguila, similarly to Alexander Arguedas, was described by the Government in their theory of the case and in their sentencing submission for Mr. Delaguila, as a "Godfather" of the Black Stone Guerrilla Gang ("BSGG").  In the Government's sentencing submission for codefendant Delaguila, the Government described Delaguila and his role as "one of the Godfathers of BSGG, the defendant was responsible for bringing new members into BSGG, disciplining disfavored members of BSGG, and ordering and approving shootings, slashings, and assaults of rival gang members." (Government's Sentencing Submission, Michael Delaguila, Page 1)

As part of the plea agreement, Mr. Arguedas accepted responsibility for the murder of Gary Rodriguez. Upon review of the discovery materials related to the Gary Rodriguez murder, the New York City Police Department initially suspected that the perpetrator was Felix Delaguila, the brother of codefendant Michael Delaguila. As part of the investigation the case detectives reviewed video surveillance footage depicting what appeared to be three Hispanic males involved in the commission of this crime. Later in the investigation, the NYPD ruled out Felix Delaguila as a suspect and issued wanted cards for co-defendant Michael Delaguila and Alexander Arguedas as a suspects. This information is documented in the NYPD Complaint Report Follow-up forms ("DD5s") numbered numbered 60 and 61 both generated and dated December 14, 2012.

We anticipate that the Government will assert that Mr. Arguedas is not similarly situated to codefendant Delaguila because he was not required to, and in fact did not, accept responsibility for the Gary Rodriguez murder. However, codefendant Delaguila and Mr. Arguedas maintained the same rank within the organization and Mr. Delaguila was clearly implicated as a perpetrator in the Gary Rodriguez homicide.

Furthermore, we anticipate that the Government will reference certain materials which were seized from Mr. Arguedas's electronic accounts and mobile telephones in their sentencing submission including videos which depict violent acts. Similarly, a review of the discovery of codefendant Delaguila's electronic media accounts includes content of the same nature depicting acts of graphic violence.

We do recognize a distinction between codefendant Delaguila and Mr. Arguedas in that there is a difference in criminal history category. This distinction is accounted for in the Guidelines calculation.

At this time the defense pleads for the Court's compassion and leniency in exercising the Court's discretion by imposing the minimum sentence permissible by law.

                      Respectfully submitted,

                      Alex Grosshtern, Esq.
                      Michael Fineman, Esq.
                      Attorneys for
                      Alexander Arguedas
                      225 Broadway
                      Suite 3010
                      New York, New York  10007

by: _____
     Alex Grosshtern, Esq.

Dated: New York, New York
       May 10, 2022

by ECF